**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

J AND J SPORTS PRODUCTIONS, INC.,

Plaintiff,

v.

JOSE MAXIMILIANO MONTECINOS, et al.,

Defendants.
_______________________________________/

No. C-09-02604 JSW (EDL)

**REPORT AND RECOMMENDATION RE: PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

Upon consideration of Plaintiff's submissions and for the reasons set forth below, the Court makes this Report and Recommendation to the Honorable Jeffrey S. White on a motion for default judgment filed by Plaintiff, J and J Sports Productions, Inc. against Defendants Jose Maximiliano Montecinos and Maria Alicia Montecinos, owners and/or operators of Coco's Bar located in San Francisco, California. Plaintiff filed this action against Defendants for violation of 47 U.S.C. §§ 553, 605, alleging that Defendants unlawfully intercepted and intentionally exhibited the June 14, 2008 closed-circuit telecast of the South American World Cup Qualifier Tournament, including but not limited to the Peru v. Columbia World Cup Qualifier Game ("soccer game").

Defendants failed to file an answer to the complaint or to appear before the Court. On October 15, 2009, the Clerk of the court entered default against Defendants. On October 30, 2009, Plaintiff filed this Motion for Default Judgment. On November 4, 2009, Plaintiff's Motion was referred to this Court for a Report and Recommendation. On November 5, 2009, Plaintiff filed two supplemental declarations in support of the motion for default judgment.

United States District Court
For the Northern District of California

The Court held a hearing on December 15, 2009. Attorney Thomas Hesketh appeared on behalf of Plaintiff, and there was no appearance for Defendants. For the reasons stated at the hearing and set forth below, it is recommended that the Court grant Plaintiff's motion and enter default judgment against Defendants in the amount of $18,750.00.

**Background**

Plaintiff obtained the exclusive nationwide commercial distribution rights to the South American World Cup Qualifier Tournament, including but not limited to, the Peru v. Columbia World Cup Qualifier Game that was telecast on June 14, 2008. See Compl. ¶ 10. The distribution rights included all interviews and game commentary encompassed in the television broadcast of the event. See id. Plaintiff entered into subsequent sub-licensing agreements with various commercial entities throughout North America, by which it granted those entities limited sublicensing rights, specifically, the rights to publicly exhibit the soccer game within their respective commercial establishments in the hospitality industry. See Compl. ¶ 11. The cost of a sublicense for an establishment of the size of Coco's Bar is $3,750.00. See Declaration of Joseph Gagliardi ¶ 8, Ex. 1. Plaintiff expended substantial funds in marketing, advertising, promoting, administering and transmitting the soccer game to the licensees. See Compl. ¶ 12.

Plaintiff also states that it has experienced a "serious erosion" in the sales of proprietary programming due to signal piracy. See Gagliardi Decl. ¶¶ 4, 11. Therefore, Plaintiff has engaged in a nationwide campaign to police its programming, specifically by having auditors visit locations that had illegally pirated the signal. See id. ¶ 6. Mr. Gagliardi states that Plaintiff's programming cannot be innocently or accidentally intercepted. See id. ¶ 9. He believes that persistent signal piracy continues because there is a perceived lack of consequences due to nominal or minimal damages awarded by courts. See id. ¶ 12.

Plaintiff alleges that Defendants unlawfully and willfully intercepted and exhibited the soccer game at Coco's Bar with full knowledge that it was not to be intercepted by commercial entities that were not entitled to do so. See Compl. ¶¶ 13-14. On the date of the soccer game, Gary Gravelyn, an investigator from Gravelyn & Associates, observed the soccer game at Defendants' establishment. See Declaration of Gary Gravelyn at 1. Mr. Gravelyn explained that he entered

Coco's bar at 7:30 p.m. on June 14, 2008 without paying a cover charge, and observed three televisions each showing the Peru v. Columbia soccer game. See id. Mr. Gravelyn stated that the capacity of Coco's Bar was approximately seventy-five people, and that he made three separate head counts of the patrons, each time counting nineteen. See id. at 2. He left at 7:45 p.m. See id.

**Discussion**

A court may not enter a default judgment against an unrepresented minor, an incompetent person, or a person in military service. See Fed. R. Civ. P. 55(b)(2); 50 App. U.S.C. § 521(b)(1). Here, Defendants are not minors, incompetent persons or in the military. See Declaration of Thomas Riley ¶ 3.

The general rule is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-918 (9th Cir. 1987) (per curiam) (citing Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977). Necessary facts not contained in the pleadings, and claims which are legally insufficient, however, are not established by default. Cripps v. Life Ins. Co. of North America, 980 F.2d 1261 (9th Cir. 1992). Rule 55(b)(2) allows, but does not require, the court to conduct a hearing on damages, as long as it ensures that there is an evidentiary basis for the damages awarded in the default judgment. Action S.A. v. Marc Rich & Co. Inc., 951 F.2d 504, 508 (2nd Cir. 1991). Relief is limited to the plaintiff's specific demand in his complaint. Fed R. Civ. P. 54(c). Entry of default judgment requires the consideration of several factors, including: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. See Eitel v. McCool, 782 F.3d 1470, 1471-72 (9th Cir. 1986).

Here, the Eitel factors weigh in favor of entry of default judgment. Most importantly, the substantive claims for violation of 47 U.S.C. § 605 appears to have merit and the Complaint is

sufficient to state a claim for violation of § 605.[1] Section 605 provides that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). Here, Plaintiff alleges that Defendants were not authorized to intercept and exhibit the soccer game, yet they did so at Coco's Bar. See Compl. ¶ 13.

Further, Plaintiff's conversion claim also appears to have merit and the Complaint is sufficient to state a claim for conversion. Under California law, conversion has three elements: 1) ownership or right to possession of property; 2) wrongful disposition of the property right of another; and 3) damages. See G.S. Rasmussen & Assoc. v. Kalitta Flying Serv., 958 F.2d 896, 906 (9th Cir. 1992). Plaintiff alleges that it obtained the nationwide distribution rights for the soccer game, and that Defendants unlawfully intercepted the soccer game and wrongfully converted it for their own use and benefit. See Compl. ¶ 25. Plaintiff alleges that Defendants deprived Plaintiff of the license fee to which Plaintiff would have been entitled had Defendants obtained a license from Plaintiff. See id. ¶ 26.

The majority of the remaining Eitel factors also weigh in favor of granting default judgment. First, if the motion were denied, Plaintiff would likely be without a remedy. See Pepsico, Inc. v. Cal. Security Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Second, because Defendants did not file an answer to the complaint, there is nothing to suggest that there is a possibility of a dispute concerning material facts. Finally, there is no evidence that Defendants' default was due to excusable neglect. Weighing slightly against entry of default judgment is the fact that the amount of money sought is somewhat disproportionate. Plaintiff seeks the maximum amount of statutory damages, as well as the maximum statutory amount of enhanced damages, for the interception of one soccer game that was shown to nineteen people. However, because entry of

---

[1] Plaintiff only seeks damages for Defendants' violation of 47 U.S.C. § 605. Therefore, the Court need not reach the question of whether Plaintiff's claim based on 47 U.S.C. § 553 has merit or whether the Complaint sufficiently states a claim for violation of that section.

default judgment is appropriate based on the other factors, the Court will address the disproportionality of the damages sought in making its damages recommendation below.

**Damages**

In a civil action under § 605, the aggrieved party can recover actual damages, or statutory damages of not less than $1,000 or more than $10,000 for each violation, as the court "considers just." 47 U.S.C. § 605(e)(3)(C)(i)(I)-(II). In cases where the court finds that the violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation . . . ." 47 U.S.C. § 605(e)(3)(C)(ii). The Court shall award full costs, including reasonable attorney's fees, to an aggrieved party. See 47 U.S.C. § 605(e)(3)(B)(iii).

Plaintiff argues that it is entitled to the maximum statutory damages of $10,000 for Defendants' interception and exhibition of the soccer game. See, e.g., J & J Sports Productions, Inc. v. Flores, 2009 WL 1860520, at *2 (E.D. Cal. June 26, 2009) (awarding $10,000 in damages under 47 U.S.C. § 605 where between thirty-three and thirty-five people were present during the broadcast, and there was no cover charge, but not stating whether the award was for statutory damages alone or whether also included enhanced damages); Joe Hand Promotions, Inc. v. Tidmarsh, 2009 WL 1845090, at *3 (E.D. Cal. June 26, 2009) (awarding $10,000 in statutory damages under 47 U.S.C. § 605 where the defendant's establishment had a maximum capacity of fifty people, there were between twenty-three and twenty-nine people there during the broadcast, and there were two televisions); J & J Sports Productions, Inc. v. Esquivel, 2008 WL 4657741, at *3 (E.D. Cal. Oct. 20, 2008) (awarding $10,000 in statutory damages under 47 U.S.C. § 605 where the defendant's establishment had a maximum capacity of seventy-five people, there were thirty-five people there during the broadcast, and there was one television); J & J Sports Productions, Inc. v. George, 2008 WL 4224616, at *2 (E.D. Cal. Sept. 15, 2008) (awarding $10,000 in damages under 47 U.S.C. § 605 where the defendant's establishment had a maximum capacity of thirty people, there were between eighteen and twenty people there during the broadcast, there was one television and there was no cover charge, but not stating whether the award was for statutory damages alone or whether also

included enhanced damages).

Several courts in this district, however, have found that an award of the statutory minimum is appropriate where, among other things, "events are broadcast on a single occasion to a small audience, and the plaintiff produces little or no evidence of financial gain." Universal Sports Network, Inc. v. Jimenez, 2002 WL 31109707, at *1 (N.D. Cal. Sept. 18, 2002) ("The courts typically have evaluated the extent to which the plaintiff demonstrated the defendant's intent to use the broadcast to realize personal gain, whether the acts of piracy were repeated, and the extent of the rebroadcast. Where events were broadcast on a single occasion to a small audience, and the plaintiff produces little or no evidence of financial gain, courts typically have awarded only the $1,000 statutory minimum."); see also e.g., J & J Sports Productions, Inc. v. Medinarios, 2008 WL 4412240, at *2-3 (N.D. Cal. Sept. 25, 2008) (awarding $1,000 in statutory damages in case where the defendant played a boxing match in violation of 47 U.S.C. § 605; there were only thirty-five customers in the establishment, there was no cover charge, there was no advertising, there was no increase in cost of beverages, there was no evidence that the customers were there solely for the boxing match and there was no evidence that the defendant was a repeat offender); Garden City Boxing Club v. Zavala, 2008 WL 3875272, at *1 (N.D. Cal. Aug. 18, 2008) (awarding $1,000 in statutory damages in case where the broadcast was made to twenty-four customers who did not pay a cover charge); Garden City Boxing Club v. Tran, 2006 WL 2691431, at *2 (N.D. Cal. Sept. 20, 2006) (awarding $1,000 in statutory damages in case where the defendant broadcast a boxing match in violation of 47 U.S.C. § 605; the defendant charged a ten dollar cover fee to forty customers present during the telecast; but there was no evidence that the defendant was a repeat offender or that the defendant engaged in any advertising); Kingvision Pay-Per-View, Ltd v. Backman, 102 F. Supp. 2d 1196, 1198-99 (N.D. Cal. 2000) (awarding $1,000 in statutory damages in case where the defendant played a boxing match in violation of 47 U.S.C. § 605; there were only sixteen customers in the establishment, there was no evidence that the defendant advertised the match, or that a premium was charged for food and drink; there was no cover charge, there was no evidence that the patrons were in the establishment solely for the match, and there was no evidence that the defendant was a repeat offender).

Although this case is factually similar to the out-of-district cases awarding substantial statutory damages, the facts of this case do not warrant the maximum statutory award, primarily because there has been no evidence that Defendants received significant financial benefits. Here, Mr. Gravelyn testified that Defendants broadcast the game on three 42 inch LCD flat screen televisions. See Gravelyn Decl. at 1. He stated that Coco's Bar had a capacity of seventy-five people, but only nineteen were there during the fifteen minutes that Mr. Gravelyn was there. See id. at 2. Coco's Bar did not charge a cover fee to watch the game. See id. at 1. There has been no showing that Defendants advertised the soccer game to attract patrons, or that the nineteen patrons in the establishment were there solely to view the soccer game. There has been no showing that the cost of beverages was increased during the game. However, there is evidence that Defendants have been accused of signal piracy on two prior occasions, and that one court in this district had previously entered default judgment against Defendants pursuant to § 605. See Supplemental Declaration of Thomas Riley ¶¶ 4-5; Ex. 1, 2. Because Defendants are repeat offenders, Plaintiff is entitled to more than the minimum statutory damages. Accordingly, the Court recommends an award of $5,000 in statutory damages pursuant to 47 U.S.C. § 605(e)(C)(i)(II).

Similarly, although enhanced damages are appropriate given the impossibility that Plaintiff's signal could be innocently or accidentally intercepted (see Gagliardi Decl. ¶ 9), the Court declines to recommend an award of the maximum amount of enhanced damages. Some district courts have found that the mere act of intercepting an encrypted signal constituted willfulness, justifying significant enhanced damages. See, e.g., Garden City Boxing Club, Inc. v. Batista, 2007 WL 4276836, at *5 (E.D. N.Y. Nov. 30, 2007) ("A defendant who intercepts signals and broadcast programming without authorization 'in a place of business where certain events are shown to the public' is generally held to have acted willfully and for purposes of commercial advantage.") (quoting Am. Cablevision of Queens v. McGinn, 817 F. Supp. 317, 330 (E.D. N.Y. 1993)); Garden City Boxing Club v. Paquita's Café, Inc., 2007 WL 2783190, at *5 (S.D. N.Y. Sept. 26, 2007) ("In order for the defendant to access the transmission, it would have been necessary to use an unauthorized decoder or to divert cable service or satellite signals into the establishment. The illegality of any of these actions would have been apparent to the perpetrator."); Entertainment by J

& J, Inc. v. Al-Waha Enterprises, Inc., 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002) (stating that based on the limited methods of intercepting closed circuit broadcasting of a pay-per-view channel, and the low probability that a broadcast could be intercepted by chance, courts have held that a defendant's interception of a signal is willful).

However, courts in this district have declined to award substantial enhanced damages in cases with facts similar to the present case, concluding that "an establishment that does not promote itself by advertising the Program, does not assess a cover charge, and does not charge a special premium for food and drinks hardly seems like the willful perpetrators envisioned by the statute's framers." See Medinarios, 2008 WL 4412240, at *3 (awarding $5,000 in enhanced damages); Zavala, 2008 WL 3875272, at *1 (awarding $5,000 in enhanced damages); Tran, 2006 WL 2691431, at *2 (awarding $5,000 in enhanced damages); Jimenez, 2002 WL 31109707, at * 2 (declining to award enhanced damages); Backman, 102 F. Supp. 2d at 1198 n. 2 (declining to award enhanced damages). Even the cases cited by Plaintiff as awarding enhanced damages did not award the statutory maximum as requested here, and in some cases, it is difficult to determine exactly the amount of the enhanced damages award. See,e.g., Joe Hand Productions, Inc. v. Haddock, 2009 WL 2136117, at *2 (E.D. Cal. July 14, 2009) (recommending an award of $25,000 in damages pursuant to 47 U.S.C. § 605, but not stating how much of the amount was enhanced damages); Kingvision Pay-Per-View v. Gutierrez, 544 F. Supp. 2d 1179, 1185 (D. Colo. 2008) (awarding $15,000 in enhanced damages where the conduct in intercepting the signal was willful, but there was no evidence of prior violations, no evidence of significant earnings by the defendant, the loss of revenue by Plaintiff for one establishment was minimal, there was no evidence of advertising and no evidence that the establishment charged a premium for food and drink); Garden City Boxing Club, Inc. v. Frezza, 476 F. Supp. 2d 135, 139-40 (D. Conn. 2007) (awarding $10,000 in enhanced damages for the willfulness of the defendant's actions even though there was no evidence of prior illegal conduct or lost revenue, and the defendant did not have ample financial resources).

Further, Plaintiff acknowledges that an award of the statutory maximum is rare. The authority Plaintiff cites does not justify such an award in this case, primarily because the reasons for the large awards are not readily apparent from the opinions. See J & J Sports Productions, Inc. v.

Ferreyra, 2008 WL 4104315, at *1 (E.D. Cal. Aug. 28, 2008) (recommending an award of $100,000 without analysis of the facts of the case except that the defendant had been sued in another action for commercial signal piracy); J & J Sports Productions, Inc. v. Lang, 2008 WL 2917165, at *1 (W.D. N.Y. July 24, 2008) (awarding $100,000 in enhanced damages without any analysis of the facts of the case justifying that amount); Kingvision Pay-Per-View, Ltd v. Guerra, 2007 WL 3001659, at *2 (S.D. Tex. Oct. 12, 2007) (awarding $50,000 in enhanced damages without discussing specific facts of the case).

Here, the facts do not support an award of the maximum amount of enhancement damages as sought by Plaintiff, but do justify some amount of enhanced damages. Defendants acted willfully in intercepting the encrypted signal for the soccer game because Plaintiff's signal could not have been accidentally intercepted. Plaintiff has filed a supplemental declaration asserting the Defendants are "multiple offenders" engaged in "persistent theft," and providing docket sheets from two other cases in this District involving Defendants. See Supp. Riley Decl. ¶¶ 4-5, Ex. 1, 2. One case was brought by this Plaintiff, but did not involve a determination on the merits because the case was voluntarily dismissed by Plaintiff. See Supp. Riley Decl. Ex. 1. The other case was brought by another plaintiff and resulted in a default judgment ruling against Defendants. See Supp. Riley Decl. Ex. 2. Because Defendants have previously been found liable under 47 U.S.C. § 605 and so were on notice that signal piracy was illegal, and in order to deter future willful violations, the Court recommends awarding enhancement damages of $10,000.

Plaintiff also seeks damages for its conversion claim in the amount of $3,750.00, which is the amount Defendants would have been required to pay had they licensed the game from Plaintiff. See Gagliardi Decl. ¶ 8. The amount of damages for conversion is appropriate under California Civil Code section 3336. See Cal. Civ. Code §3336 ("The detriment caused by the wrongful conversion of personal property is presumed to be: First--The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; . . . ."). Accordingly, the Court recommends awarding Plaintiff $3,750.00 in damages for conversion.

**United States District Court**
For the Northern District of California

**Conclusion**

The Court recommends granting Plaintiff's Motion for Default Judgment in the amount of $5,000.00 in statutory damages and $10,000.00 in enhanced statutory damages based on Defendants' violation of 47 U.S.C. § 605. The Court also recommends granting Plaintiff's Motion for Default Judgment in the amount of $3,750.00 for conversion. Plaintiff confirmed at the hearing that it did not seek an award of attorney's fees or costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).

Any party may serve and file specific written objections to this recommendation within fourteen days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the District.

Dated: December 17, 2009

ELIZABETH D. LAPORTE
United States Magistrate Judge